# IN THE COURT OF APPEALS OF IOWA

No. 19-1553
Filed November 27, 2019

**IN THE INTEREST OF M.L.,**
**Minor Child,**

**R.L., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.


A father appeals the termination of his parental rights to his now seven-year-old son. **AFFIRMED.**


Timothy J. Tupper, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Special Assistant Attorney General, for appellee State.

Martha Cox, Bettendorf, guardian ad litem for minor child.


Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

An incarcerated father, Robert, seeks reversal of the juvenile court's order terminating his parental relationship with his son M.L., who was born in September 2012. Robert realizes he cannot care for his son at the present time. But he argues termination is not in M.L.'s best interests. He also believes the court should have exercised its discretion not to terminate based on their strong father-son bond and the fact that the Iowa Department of Human Services (DHS) was transitioning M.L. to a relative placement.

After considering the upheaval M.L. has experienced in his home life and the toll it has taken on him, we decline to reverse the termination order.[1] Prolonged uncertainty about his future will likely worsen M.L.'s mental-health condition. Robert's addiction and criminal involvement with illicit drugs have left him unavailable for his son. Neither the best-interest framework in Iowa Code section 232.116(2) (2019) nor the factors weighing against termination in section 232.116(3) can change the narrative here. Because termination clears M.L.'s legal path toward permanency, we affirm the order.[2]

### I.      Facts and Prior Proceedings

M.L.'s first removal from his home occurred in June 2017. Robert and his girlfriend were using controlled substances while caring for then four-year-old M.L. Executing a criminal search warrant revealed methamphetamine, marijuana,

---

[1] Our review is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on issues of witness credibility. *Id.*

[2] The order also terminated the parental rights of M.L.'s mother, Candice. She does not appeal.

prescription pills, and drug paraphernalia in the father's Davenport home. The State charged Robert with child endangerment and keeping a drug house. When the DHS wanted to verify drug exposure, Robert shaved both his own head and M.L.'s head to avoid having their hair tested. M.L.'s mother, Candice, who lived in Fort Dodge, could not take over M.L.'s care because she too was using illegal drugs and had warrants out for her arrest. The juvenile court adjudicated M.L. as a child in need of assistance in August 2017.

M.L.'s life has been unsettled since. He briefly went to foster care, then to live with his parental aunt and uncle for about one year, and then back to foster care.

Meanwhile, Robert made some strides in his fitness to parent. He completed substance-abuse treatment, and entered Family Wellness Court. But Robert relapsed and, by August 2018, faced new drug charges. The juvenile court wrote: "In September of 2018 the Court had to abandon hopes Robert would regain custody. Reunification services were ordered to stop for him." The State petitioned to terminate parental rights in September 2018. But the juvenile court dismissed that petition in February 2019, hoping Candice could resume care of M.L. The DHS returned M.L. to his mother's custody in March 2019. But the return was short-lived. After he suffered injuries twice while in her care, the DHS again removed him from his home in May 2019. He moved to family foster care and then to stay with respite-care foster parents.

When the State filed its petition to terminate parental rights in June 2019, M.L. had been out of his father's care for two years. The juvenile court held a hearing on the termination petition in September 2019. Robert appeared by

telephone from prison, where he had been since June 2019 when the criminal court revoked his probation for using methamphetamine. Robert testified: "I made a mistake. . . . I can't change the past. I would still like the opportunity to be part of my son's life." The father expected to be paroled from prison in July 2020.

In its case for termination, the State offered the testimony of the DHS case worker. She explained M.L. was currently in foster care, but the DHS planned to transition him back to the home of his paternal aunt and uncle. The record also included a letter from M.L.'s medical doctor discussing the child's diagnoses with oppositional defiant disorder and attention deficit hyperactivity disorder. The doctor expressed his "strong opinion" M.L. needed "as little disruption in his life as possible." The doctor believed change would "cause a rebound in symptoms" and "would be extremely detrimental" to M.L.'s general well-being.

The court granted the petition to terminate Robert's parental rights under Iowa Code section 232.116(1), subsections (d), (e), and (f). Robert now appeals.

## II.    Analysis

Robert does not contest the State's clear-and-convincing proof of the statutory grounds for termination. *See* Iowa Code § 232.116(1). Instead, he argues termination of his parental rights is not in M.L.'s best interests. *See* Iowa Code § 232.116(2). Robert asserts he "has good visits and interactions with the child when he is able." Robert also contends section 232.116(3) "negates the need for termination" because he has a strong bond with the child and "M.L. is being transitioned to relative placement." *See id.* § 232.116(3)(a), (c).

On the best-interests challenge, the courts give "primary consideration to the child's safety," to the best placement for furthering his long-term nurturing and

growth, and to his physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (discussing section 232.116(2)). Here, because of his history of addiction and involvement with illicit drugs, Robert could not show he can provide M.L. with a safe home. The record reveals evidence of M.L.'s aggressive behaviors and his progress in therapy while in foster care. The anxiety of waiting for Robert to be released from prison and to become a fit parent will not promote M.L.'s long-term growth and emotional stability. *See id.* (stressing courts should not deprive a child of permanency by hoping his parent will someday be able to provide a stable home).

Finally, we turn to the permissive factors weighing against termination. *See In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018) (holding parent resisting termination has burden to prove permissive factor under section 232.116(3)). To that end, Robert argues he has a close bond with M.L. *See* Iowa Code § 232.116(3)(c) (allowing court to reject termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The case worker agreed M.L. was "excited to see" Robert during their visits. But she added that when Robert "just completely stopped showing up" M.L. did not "seem to be too affected by it." Under these facts, Robert did not establish this basis for rejecting termination.

On the relative placement factor, because the aunt and uncle did not have legal custody of M.L., the juvenile court could not exercise that option to forgo termination under section 232.116(3)(a). *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

After a full review of the record, we find no basis to reverse the order terminating Robert's parental rights.

**AFFIRMED.**